UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
LOREN MORGAN,

                              Plaintiff,

        -against-

COLVIN MOTOR PARTS OF LONG ISLAND, INC.,

                              Defendant.
---------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

      Plaintiff LOREN MORGAN, by and through his attorneys, NISAR LAW GROUP, P.C., brings this action against Defendant, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and seeks damages to redress the injuries he has suffered as a result of being **discriminated against due to his age (86 years old at the time of the alleged discriminatory acts)**.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 29 U.S.C. § 626(c) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a charge of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC on April 22, 2022.

7. This Action is being commenced within 90 days of receipt of said Notice.

## PARTIES

8. At all times relevant, Plaintiff LOREN MORGAN ("Plaintiff") was and is a resident of the State of New York and Queens County.

9. At all times relevant, Defendant Colvin Motor Parts of Long Island, Inc. ("Defendant" or "Colvin") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York.

10. At all times relevant, Defendant owns, operates, and/or maintains an auto parts store located at 2273 Babylon Turnpike, Merrick, NY 11566 (the "store").

11. At all times relevant, a person named Duane Duryea ("Mr. Duryea") was and is the owner of Defendant, as well as Plaintiff's supervisor, in that, he had the power to directly affect the terms and conditions of Plaintiff's employment, as well as directly manage his daily work activities.

12. At all times relevant, Plaintiff was an employee of Defendant.

## MATERIAL FACTS

13. Insofar as is relevant, Plaintiff's birthday is October 1, 1934. As such, at all times relevant, he was 86 years old (he turned 87 years old in October 2021).

14. Plaintiff first began working for Defendant at the store in 1984 when he was 49 years old as a counter employee. Plaintiff worked at Colvin consistently from 1984 through 2020 (i.e., for 36 years); throughout this period, he was an overall good employee who

consistently received praise for his work performance.

15. In 2020, COVID-19 hit America, however, Colvin never closed, and despite Plaintiff being at increased risk to his health given his advanced age, he came into work diligently without complaint or issue.

16. Nevertheless, on December 14, 2020, near the end of the day (i.e., around 5:50 PM), Plaintiff tripped over a stool behind the counter causing him to fall and fracture his hip. An ambulance was called and took Plaintiff to the ER. After a 5-day period of being in the hospital, Plaintiff was released with a rod having been placed in his leg. Thankfully, he did not need a hip replacement. Throughout this time, Plaintiff was in touch with Mr. Duryea who told Plaintiff to keep him (Mr. Duryea) posted as to the rehabilitation of his (Plaintiff's) hip.

17. Plaintiff and Mr. Duryea first saw one another two to three weeks after Plaintiff's accident. In fact, the facility where Plaintiff had his therapy sessions was close to the store and thus, Plaintiff made it a habit of swinging by when going to and from physical therapy. In fact, Plaintiff stopped by Colvin on average of two to three times per week. During this time, Mr. Duryea encouraged Plaintiff to apply for unemployment benefits as well as workers' compensation benefits (which Plaintiff did as to both). Mr. Duryea's logic (which he told Plaintiff) was that business was generally slower at the store in the winter and that Plaintiff should "string it out" (Mr. Duryea's words referring to collecting government benefits) until Plaintiff was able to return. Notably, throughout the winter and into the spring of 2021, Mr. Duryea always confirmed with Plaintiff that his (Plaintiff's) job was there for him when he came back to work.

18. Nevertheless, on May 10, 2021, Plaintiff's orthopedic doctor—to wit, a person named Dr. Jordan Kerker, M.D.—gave Plaintiff a doctor's note advising that Plaintiff "may return to

work without restrictions." Accordingly, Plaintiff gave that note to a person named Billy Pohl (who was Colvin's office manager) and confirmed that he could return to work. At this point, Plaintiff expected to be placed back on the schedule.

19. However, throughout May, June, and July 2021, Plaintiff was not placed back on the schedule. In fact, during this period, Plaintiff was continuing to stop by the store to check in. One particular day near the end of July 2021, Plaintiff inquired with Mr. Duryea as to when he would be able to return to work, to which Mr. Duryea responded that he'd "think about it." Plaintiff was taken aback by this remark as he believed all along that he would be coming back to work. In fact, this is exactly what Mr. Duryea had been leading him to believe. Plaintiff wanted to be delicate with the situation and didn't press Mr. Duryea on his seeming about-face.

20. The following month (August 2021), Plaintiff again approached Mr. Duryea as to when he (Plaintiff) will be coming back to work, to which Mr. Duryea responded this time that Plaintiff coming back "doesn't look good."

21. A week or so later, Plaintiff approached Mr. Duryea again and asked for clarity on the "doesn't look good" comment. During this conversation, Mr. Duryea reiterated that he (Plaintiff) returning "doesn't look good," to which Plaintiff asked "so that's it?" In response, Mr. Duryea replied "Yes." Thus, as of August 2021, Plaintiff knew unequivocally that his employment had been terminated.

22. We contend that the reason Plaintiff suffered an adverse employment action (whether it be him being fired, not rehired, or otherwise) was motivated, at least in part due to Plaintiff's age (86 as of August 2021).

23. Throughout Plaintiff's employment, he observed many Colvin employees having to take time away from work (oftentimes extended time and not uncommonly due to physical

injury), but those employees were always welcomed back. Further, during this time that Plaintiff was visiting the shop and asked others why he wasn't being put back on the schedule, one such employee said that Mr. Duryea remarked that he feared Plaintiff may fall and hurt himself again. If this is true, it is a clear ageist rationale.

24. In sum, we believe that but for Plaintiff's age, he would not have suffered an adverse employment action. No reasonable rationale has been given to Plaintiff regarding his employment termination (Note: Plaintiff was an employee who had been working for Colvin for 36 years as of 2020). Also, other injured or sick Colvin employees had routinely gone out of work but were welcomed back upon healing. Plaintiff was never extended this opportunity.

25. As a result of the behavior described above, Plaintiff's employment was terminated, at least in part, due to his age.

26. Plaintiff feels offended, disturbed, and humiliated by the discrimination faced.

27. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

28. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages and liquidated damages against Defendant.

**AS A FIRST CAUSE OF ACTION**
**<u>FOR DISCRIMINATION UNDER THE ADEA</u>**

29. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

30. This claim is authorized and instituted pursuant to the provisions of the ADEA, 29 U.S.C. § 623(1), for relief based upon the unlawful employment practices of the above-named Defendant.

31. Plaintiff complains of Defendant's violation of the ADEA's prohibition against discrimination in employment based, in whole or in part, upon an employee's age.

32. Defendant's violation of the ADEA was willful and Plaintiff seeks liquidated damages for each violation.

33. Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages, as the direct and proximate result of Defendant's violation of the ADEA. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. § 216(b), including actual damages, compensatory damages, liquidated damages, and attorneys' fees.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

34. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

35. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

36. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his age causing him damages.

6

## **JURY DEMAND**

37. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADEA and the NYSHRL by discriminating against Plaintiff on the basis of his age;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and/or physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff liquidated damages;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
       July 19, 2022

                                                  **NISAR LAW GROUP, P.C.**

By: _____
       Casey Wolnowski, Esq.
       *Attorneys for Plaintiff*
       One Grand Central Place
       60 East 42nd Street, Suite 4600
       New York, NY 10165
       Direct: (646) 889-1007
       Fax: (516) 604-0157
       Email: cwolnowski@nisarlaw.com